## FLYNN CONSTRUCTION CO., INC.

### v.

### Armel POULIN.

Supreme Judicial Court of Maine.

Argued Jan. 3, 1990.

Decided Feb. 22, 1990.

Francis Jackson (orally), Sarah Allison Thornton, Portland, for plaintiff.

Julian Sweet, Thomas J. Valvano, Paul F. Macri (orally), Berman, Simmons & Goldberg, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, HORNBY and COLLINS, JJ.

GLASSMAN, Justice.

By his appeal, Armel Poulin challenges the judgment entered on a jury verdict (Cumberland County, *Silsby, J.*) awarding Flynn Construction Co., Inc. (Flynn), a Maine corporation, $15,000 as damages for the cost of a replacement for its employee Robert Batchelder, who was negligently injured by Poulin. Poulin also challenges the award of $1,282 to Flynn for the rental cost of a vehicle to replace Flynn's truck while the damage to it caused by Poulin was being repaired. We hold that Flynn cannot recover from Poulin the amount paid by it to Batchelder's replacement. We also hold that 14 M.R.S.A. § 1454 (1980)[1] limits Flynn's recovery for the reasonable rental costs of a replacement motor vehicle to the 30–day statutory period. Accordingly, we vacate the judgment.

Robert Batchelder is one of two stockholders in Flynn. As a salaried employee of Flynn, he did not receive any additional compensation for the overtime hours he worked. Batchelder and his son were travelling in a truck owned by Flynn when it was struck by a vehicle operated by Poulin. Batchelder was unable to work for several weeks and when he returned to his job was unable to work the number of overtime hours he had worked before the accident. Although from the date of the accident Flynn continued to pay Batchelder his regular salary, Flynn hired Ronald Libby at an hourly rate of pay to do the work Batchelder was unable to do. Flynn paid

---

**1.** 14 M.R.S.A. § 1454 (1980) provides:

*Cost of replacement of motor vehicles*

In any action where recovery is sought for the destruction or damage of a motor vehicle, the owner of such motor vehicle shall be entitled to recover reasonable rental costs actually expended for a replacement motor ve-

hicle during such time, *not to exceed 30 days,* as the damaged motor vehicle could not be operated or during such time, *not to exceed 30 days,* as is required to obtain a replacement vehicle for the destroyed motor vehicle. (Emphasis added).

Libby one and one-half times his hourly rate of pay for the time he worked in excess of 40 hours a week.

By his complaint against Poulin, Batchelder sought, *inter alia,* damages for his lost earning capacity.[2] Flynn also filed suit against Poulin. In its complaint, Flynn requested two kinds of relief: the cost of hiring a replacement for Batchelder and the cost of renting Batchelder's personal vehicle for 45 days while Flynn's damaged truck was being repaired. By his answer to Flynn's complaint, Poulin asserted, *inter alia,* that Flynn had failed to state a claim upon which relief could be granted. Flynn's action was consolidated with that of the Batchelders. The trial court denied Poulin's motion in limine seeking to prevent Flynn from introducing evidence regarding the amounts it sought to recover for the cost of hiring a replacement worker for Batchelder.

Because Poulin stipulated that he was liable for the collision of the two vehicles, the consolidated cases proceeded to a jury trial solely on the issues of damages. At trial, Flynn introduced evidence regarding the amounts of regular and overtime wages it paid to Libby. It also produced evidence that it had rented a replacement vehicle for 45 days at a cost of $38 per day. Poulin did not testify and did not call any witnesses on his behalf. At the close of Flynn's evidence, Poulin moved for a directed verdict on Flynn's claim for the recovery of damages for the cost of hiring a replacement for Batchelder. The trial court denied the motion. Poulin also objected to that portion of the special verdict form that addressed Flynn's claim for amounts paid to Libby. The trial court overruled Poulin's objection and instructed the jury that the measure of damages for

the lost services of Robert Batchelder was the fair and reasonable cost of paying someone else to do the work that, but for Poulin's negligence, Batchelder would have done. The court also instructed the jury that Batchelder could recover the present cash value of his past, present and future lost earning capacity.

Poulin submitted to the court a proposed instruction that pursuant to 14 M.R.S.A. § 1454, Flynn could recover rental costs for the use of a replacement vehicle for only 30 days. Flynn countered that the statute did not apply to rental costs for a commercial vehicle. The trial court refused Poulin's requested instruction on the ground that the replacement vehicle claim was governed by common law and not by section 1454. The court instructed the jury that Flynn could recover the fair and reasonable costs of renting a replacement vehicle over a reasonably necessary period of time. The jury awarded Flynn $15,000 for the cost of hiring a replacement for Robert Batchelder and $1,282 on its replacement vehicle claim. On appeal, Poulin challenges the damages awarded to Flynn.

## I. *The Replacement Worker*

■ Historically, some states recognized an employer's common law action to recover damages for the loss of its employee's services from the negligent third party who caused the employee's death or injuries. We find no cases, nor has Flynn cited any, that indicate Maine has ever recognized such a cause of action. The majority of courts that have relatively recently addressed this issue have denied the employer's recovery.[3] Those courts have reasoned that the close, almost familial, relationship between master and servant that

2. The jury awarded Robert Batchelder a lump sum of $10,010.25 as damages for his claims against Poulin. Mrs. Batchelder and the Batchelders' son Randy also sued Poulin. The jury awarded Mrs. Batchelder $2,000 for loss of consortium. Randy recovered $362.40 for his injuries. There has been no challenge to the judgments entered on these jury verdicts.

3. *See, e.g., I.J. Weinrot & Son, Inc. v. Jackson,* 40 Cal.3d 327, 708 P.2d 682, 220 Cal.Rptr. 103 (1985); *Hartridge v. State Farm Mut. Auto. Ins.*

*Co.,* 86 Wis.2d 1, 271 N.W.2d 598 (1978); *Frank Horton & Co. v. Diggs,* 544 S.W.2d 313 (Mo.Ct. App.1976); *Steel v. J & S Metals, Inc.,* 32 Conn. Supp. 17, 335 A.2d 629 (1974); *Nemo Foundations Inc. v. New River Co.,* 155 W.Va. 149, 181 S.E.2d 687 (1971); *Pellegrin v. Hebert,* 107 So.2d 853 (La.Ct.App.1959); *Philadelphia v. Philadelphia Rapid Transit Co.,* 337 Pa. 1, 10 A.2d 434 (1940); and *Chelsea Moving & Trucking Co. v. Ross Towboat Co.,* 280 Mass. 282, 182 N.E. 477 (1932).

gave rise to the cause of action no longer exists.[4] The cases cited by Flynn to support its cause of action generally involved a self-employed plaintiff who because of the negligent infliction of injuries by a defendant could no longer operate a business without hiring a replacement worker or additional help.[5] Here, Batchelder, the injured employee, sought and recovered damages from Poulin for his past, present and future loss of earning capacity by reason of Poulin's negligence. *See Michaud v. Steckino*, 390 A.2d 524, 536–37 (Me.1978); D. Alexander, *Manual of Jury Procedures and Instructions for Maine* 200 (1987). To allow Flynn to recover for this same loss would expose Poulin to double liability for the same negligently inflicted injuries. We hold that Flynn may not recover for either the cost of the regular hourly wage or the cost of overtime hours it paid to the employee it hired to replace Batchelder. Accordingly, the jury award of $15,000 to Flynn on this claim cannot stand.

## II. *The Replacement Vehicle*

██ We agree with Poulin that 14 M.R.S.A. § 1454 (1980) controls a plaintiff's recovery for the cost of renting a replacement vehicle in an action for destruction or damage to a motor vehicle. We find no common law in Maine that addresses this issue. Nor do we find any merit in Flynn's argument that this statute does not apply to commercial vehicles. On its face, the statute draws no distinction between a vehicle used for commercial purposes and one used as a personal vehicle. When a statute fully regulates the procedures for relief, it must be assumed that the Legislature intended the statutory remedy to be exclusive. *King Resources Co. v. Environmental Improvement Comm'n*, 270 A.2d 863, 866 (Me.1970). The trial court's instruction regarding Flynn's replacement vehicle claim contravenes the plain language of 14 M.R.S.A. § 1454. An error in a jury instruction or in a refusal to give a requested instruction is reversible error only if it resulted in prejudice. *Murray v. Eastern Maine Medical Center*, 447 A.2d 465, 466 (Me.1982). Here, the court's instruction regarding Flynn's replacement vehicle claim resulted in prejudice to Poulin because it improperly extended Poulin's liability beyond the statutory 30–day period. Poulin did not and does not now challenge the reasonableness of a rental of $38 a day paid by Flynn for the replacement vehicle while its truck was being repaired. Accordingly, Flynn is entitled to recover a total of $1,140 for the 30–day period provided by 14 M.R.S.A. § 1454.

The entry is:

Judgment for Flynn Construction Co., Inc. vacated. Remanded for the entry of a judgment for Flynn Construction Co., Inc. in the amount of $1,140.

All concurring.

---

**4.** *See* Annotation, "Employer's Action for Injury to Employee," 4 A.L.R. 4th 504 (1981); and *Restatement (Second) of Agency* § 316 comment b (1958):

> [A]t the time of the early common law, the relation between master and servant was very close. Servants, frequently apprentices, were considered as part of the household of the master. Because of this, the master was given an action against anyone who tortiously harmed the master's servant.... For several hundred years, however, there have been few cases in which a master has brought an action for negligent harm to a servant not a member of his family. There are few modern cases allowing such an action and even fewer modern cases denying it.... In this state of the authorities, it does not seem advisable to state either that an action can be maintained by the principal for loss of services, or that it cannot be maintained.

**5.** *See, e.g., Moiger v. Connecticut Ice Cream Co.*, 146 Conn. 551, 152 A.2d 925 (1959) (self-employed injured plaintiff obliged to hire others to do work which, but for his injuries, he would have done may recover reasonable cost of hiring substitute); *Turner v. Vineyard*, 46 Del. 138, 80 A.2d 177 (1951) (self-employed injured plaintiff may recover costs of replacement worker); and *Nusser v. United Parcel Service of New York*, 3 N.J.Super. 64, 65 A.2d 549 (1949) (in personal injury action, evidence that partnership of which plaintiff was a member hired replacement during plaintiff's absence was admissible on damages issue where defendant made no objection).